Janice M. Bellucci, SBN 108911
(JMBellucci@aol.com)
LAW OFFICE OF JANICE M. BELLUCCI
1215 K Street, 17th Floor
Sacramento, CA 95814
Tel:   (805) 896-7854
Fax:   (916) 823-5248

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

MARTIN WEISS, an individual,

                Plaintiff,

    vs.

CITY OF CLAREMONT, an
incorporated California Municipality;
and DOES 1 to 10, inclusive,

                Defendants.

Case No. 2:17-cv-05713

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1.      This civil rights action challenges the entirety of Title 9, Chapter 9.82 of the Claremont Municipal Code that constitute residency restrictions for Registered Sex Offenders ("Registrants") (hereinafter, the "Claremont Residency Restrictions" or "the Ordinance") because, on their face and as applied, the Claremont Residency Restrictions are preempted by California state law, and violate the Fourteenth Amendment to the United States Constitution, as more specifically alleged herein.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## JURISDICTION AND VENUE

2.     This court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331, 1343(a), 1367(a), and 2201, as well as 42 U.S.C. Section 1983.

3.     Under 28 U.S.C. Section 1391(b), venue is proper in this Federal district because Defendant City of Claremont is a municipality in this district and the events giving rise to the claims have occurred and continue to occur in this district.

## PARTIES

4.     Plaintiff Martin Weiss ("Plaintiff") is and at all times material to this action was a resident of the State of California as well as a citizen of the United States. Plaintiff is required to register as a sex offender pursuant to California Penal Code Section 290, *et seq.* Plaintiff resides in Los Angeles County, within approximately 25 miles of the City of Claremont, and is therefore within geographic proximity to that City. Plaintiff intends to establish, and would in fact establish, a lawful residence in the City, including by spending nights in a hotel, motel, or inn within the City of Claremont, but he is prohibited from spending even one night in the City due to the Ordinance and its penalties, which include incarceration and/or fines. Plaintiff is therefore prohibited from temporarily or permanently residing in Claremont due to the City's residency restrictions.

5.     The City of Claremont ("Claremont" or "Defendant") is an incorporated municipality located in Los Angeles County, California. Claremont adopted the Ordinance at issue here through the five-member Claremont City Council and enforces that ordinance through the Claremont Police Department.

6.     The true names and capacities of Defendants sued as Does 1 through 10 are unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Plaintiff will seek leave to amend this Complaint, if necessary, to reflect the true names once they have been ascertained.

7.     Claremont and Does 1 through 10 are collectively referred to herein as "Defendants."

---

2

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## FACTS

8.     The Claremont City Council adopted Ordinance 2010-01, which was subsequently codified as Claremont Municipal Code, Title 9, Chapter 9.82, Sections 9.82.010 through 9.82.080, entitled "Sex Offender Residency Restrictions" (hereinafter, the "Claremont Residency Restrictions" or "the Ordinance") on January 12, 2010.  The Ordinance went into effect in February 2010.

**The Ordinance's Residential Exclusion Zones**

9.     The Ordinance states that "[a] registered sex offender shall be prohibited from renting or otherwise occupying any dwelling within a residential exclusion zone." Ordinance § 9.82.030(A).  The Ordinance defines "residential exclusion zone" as "any area located within two thousand (2,000) feet from the nearest property line of the subject property to the nearest property line of a child care center, public or private school (grades K through 12) and/or park."  Ordinance § 9.82.010.  The Ordinance does not define the terms "occupy" or "occupying."

10.     The Ordinance defines "registered sex offender" as "any person who is required to register under Section 290 of the California Penal Code, regardless of whether or not that person is on parole or probation.  For purposes of this chapter, 'registered sex offender' includes those who have failed to register pursuant to Section 290 of the California Penal Code."  Ordinance § 9.82.010.  The definition of "registered sex offender" includes all Registrants, even those whose convictions did not involve a minor.

11.     The Ordinance defines "child care facility" as "any State of California, Department of Social Services licensed facility that provides non-medical care to children in need of personal services, supervision, or assistance essential for sustaining the activities of daily living or for the protection of children on less than a twenty-four (24) hour basis, including, but not limited to, a family day care home, infant center, preschool, extended day care facility, or school-age child care center, as such are clearly identified by signage at the entrance to each facility."  Ordinance § 9.82.010.  Upon information

---

3

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

and belief, and based upon publicly available records, there are at least ten (10) child care centers within Claremont.

12. The Ordinance does not define "public or private school (grades K through 12)." Upon information and belief, and based upon publicly available records, there are at least fifteen (15) public or private elementary and secondary schools within Claremont.

13. The Ordinance defines "park" as "any area owned, leased, controlled, maintained, or managed by a public entity which is open to the public where children regularly gather and which provides recreational, cultural, and/or community service activities including, but not limited to, playgrounds, playfields, and athletic courts." Ordinance § 9.82.010. Upon information and belief, and based on publicly available records, there are at least twenty-three (23) parks within Claremont.

**The Ordinance's Density and Concentration Restrictions**

14. In addition to blanket Residential Exclusion Zones discussed immediately above, the Ordinance imposes additional "Density Restrictions" and "Concentration Restrictions" which further limit the locations in Claremont where a Registrant may reside. As discussed immediately below, Density Restrictions and Concentration Restrictions apply based on factors that include (1) whether a Registrant is a "permanent" or "temporary" resident; and (2) whether a Registrant resides in a "Single family dwelling," a "Multifamily dwelling," a "Duplex dwelling," or a "Hotel." In addition, these Density and Concentration Restrictions apply regardless of whether the affected residence is inside or outside a Residential Exclusion Zone.

15. Pursuant to the Ordinance, Registrants who "obtained the right to occupy a dwelling, including, but not limited to, a single-family dwelling, multifamily dwelling, duplex, hotel or motel for more than thirty (30) consecutive days" are deemed "Permanent residents," whereas Registrants who "obtained the legal right to occupy or reside in a single-family dwelling or multifamily dwelling, including, but not limited to, a hotel or motel" are deemed "Temporary residents." Ordinance § 9.82.010.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

16.    The Ordinance defines "Single-family dwelling" as "any lot designed for permanent residency and containing one and only one dwelling unit."  Ordinance § 9.82.010.

17.    The Ordinance defines "Multifamily dwelling" as "a residential structure designed for the permanent residency of two (2) or more individuals, groups of individuals, or families living independently. This definition shall include a duplex, apartment house, and a condominium complex, but shall not include a hotel."  Ordinance § 9.82.010.

18.    The Ordinance defines "Hotel" as "any commercial establishment that rents guest rooms or suite to the public on a nightly, weekly, or monthly basis, and shall include a motel and an inn that operates in such capacity."  Ordinance § 9.82.010.

19.    The Ordinance prohibits a Registrant "from renting or otherwise occupying" any Single-family dwelling, a Multifamily dwelling unit, or guest room of a Hotel if another Registrant also occupies that unit or room, unless the Registrants are "legally related by blood, marriage, or adoption."  Ordinance §§ 9.82.030(B), 9.82.035(A).

20.    The Ordinance also prohibits a Registrant "from renting or otherwise occupying a unit in a multifamily dwelling as a permanent resident if there is another unit in that multifamily dwelling that is already rented or otherwise occupied by a registered sex offender unless those persons are legally related by blood, marriage, or adoption." Ordinance § 9.82.030(C).  In other words, if a Registrant already occupies a single unit in a given apartment or condominium complex, then no other Registrant may occupy any other unit in that entire complex as a Permanent resident.

21.    The Ordinance also prohibits a Registrant "from renting or otherwise occupying a guest room in a hotel as a permanent resident if there is another guest room in that hotel that is already rented or otherwise occupied by a registered sex offender as a permanent resident, unless those persons are legally related by blood, marriage, or adoption." Ordinance § 9.82.035(B).  In other words, if a Registrant already occupies a

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

single guest room within a given Hotel, no other Registrant may occupy any other room in that entire Hotel.

**Claremont's Residential Exclusion Zones Cover Virtually the Entire City**

22.     On information and belief, the Claremont Residency Restrictions are more restrictive than most other residency restrictions ordinances in this jurisdiction, in that they exclude Registrants from residing in most single-family housing in Claremont, as well as virtually all multifamily housing in the City of Claremont.  These facts are significant because, in the case *In re Taylor*, the California Supreme Court held that, when assessing the impact of residency restrictions, the appropriate measure is not all available housing, but the availability of affordable housing of the type that Registrants are likely to rent:  multifamily units for $850 per month or less.  *In re Taylor*, 60 Cal. 4th 1019, 1029 (2015).  Specifically, the Supreme Court treated single-family residences as irrelevant to its analysis because Registrants are "unlikely candidates to rent single-family homes."  60 Cal 4th at 1029.  The Supreme Court also ignored housing that could not be obtained for less than $850 per month, which is representative of the SDI and SSDI benefits available to registrants.  60 Cal 4th at 1030.  Further, the *Taylor* Court concluded that the residency restrictions in that case excluded Registrants from approximately 97% of multifamily property in the relevant geographic area.  *Id.* at 1039-40.  Because the Claremont Residency Restrictions exclude Registrants from an even greater area, the Claremont Residency Restrictions effectively banish Registrants from all affordable housing in Claremont.

23.     Upon information and belief, even if the Claremont Residency Restrictions did permit housing in multifamily developments, such housing would be neither available nor affordable.   First, as discussed above, Claremont's Density Restrictions arbitrarily cap the number of Registrants in any given multifamily housing complex at one (1), thereby limiting the total number of available multifamily *units* in Claremont to the number of apartment *complexes* within the City.  Second, upon information and belief,

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

any available multifamily units in Claremont would nevertheless be unaffordable as the median gross monthly rent in Claremont exceeds $1,400, which is well above the rate of rent deemed affordable by the *Taylor* Court.[1]  Further, the housing restrictions in Claremont are exacerbated by the fact that multifamily housing in Claremont is limited by the relatively high percentage of single family housing in that City, as well as the large portions of the City dedicated to non-residential uses, such as the City's numerous colleges and universities.  Therefore, in order to comply with the Claremont Residency Restrictions, Plaintiff and all Registrants are unable to "reside" within Claremont because there is no affordable residential real estate available to them

24.     The Ordinance declares that "any person who violates this chapter shall be guilty of a misdemeanor," and provides for punishment by a fine up to one thousand ($1,000.00) dollars or by imprisonment in the County jail for six (6) months, or by both such fine and imprisonment.  Ordinance § 9.82.080(A).  The Ordinance also provides that "[e]ach day that a violation of this chapter exists shall be deemed a new and separate offense." Ordinance § 9.82.080(B) (emphasis added).  Further, the Ordinance provides that "[i]n any civil action or proceeding, administrative proceeding, or special proceeding, including, but not limited to those brought to abate a public nuisance, the prevailing party will be entitled to recovery of all costs, attorney's fees and expenses[.]" Ordinance § 9.82.070(B).

25.     By definition, the Claremont Residency Restrictions do not apply to anyone who is not required to register as a sex offender pursuant to Penal Code section 290.  In addition, the Claremont Residency Restrictions do not apply to "[t]enancies or other occupancies commenced prior to the effective date of the ordinance codified in this chapter, or to the renewals of any such tenancy or occupancies."  Ordinance § 9.82.060(A).  In addition, the Ordinance provides that "[t]he first sex offender to establish a lawful residency shall not be in violation of this chapter if another sex

---

[1] http://www.city-data.com/city/Claremont -California.html.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

offender attempts to establish residency within the prohibited location."  Ordinance § 9.82.060 (B).

**Claremont's Residency Restrictions are Irrational and Injurious to Public Safety as Confirmed by Case Law and Studies by Subject Matter Experts**

26.    Because Claremont continues to enforce the Claremont Residency Restrictions in a manner that prohibits Plaintiff and other Registrants who currently reside outside of Claremont from acquiring a residence in Claremont, the Claremont Residency Restrictions accomplish the unconstitutional goal of banishment, do not serve any legitimate government purpose, and are not appropriately tailored or related to any lawful purpose.

27.    Because Claremont continues to enforce the Claremont Residency Restrictions in a manner that prohibits Plaintiff and other Registrants who currently reside outside of Claremont from acquiring a temporary residence in Claremont for even one night, the Claremont Residency Restrictions accomplish the unconstitutional goal of banishment, do not serve any legitimate government purpose, and are not appropriately tailored or related to any lawful purpose.

28.    Because Claremont continues to enforce the Claremont Residency Restrictions in a manner that prohibits Registrants who already reside within Claremont from moving to a new residence within that city, the Claremont Residency Restrictions accomplish the unconstitutional goal of banishment, do not serve any legitimate government purpose, and are not appropriately tailored or related to any lawful purpose.

29.    California's Proposition 83, also known as "Jessica's Law" (effective November 6, 2006), as codified in subsections (b) and (c) of California Penal Code section 3003.5, authorizes local governments to enact ordinances that further restrict the residency of Registrants who are subject to the residency restrictions of Penal Code section 3003.5(a).  However, because Penal Code section 3003.5(a) applies only to parolees, Jessica's Law does not authorize local governments to impose residency

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

restrictions on non-parolees.  *People v. Lynch*, 2 Cal. App. 5th 524 (2016).  Moreover, to the extent that local governments may impose residency restrictions on parolees, the California Supreme Court has ruled that such restrictions may not be imposed upon Registrants in a manner that deprives them of their constitutional rights and liberty interests, including their right to be free from arbitrary, oppressive, and unreasonable laws that bear no rational relationship to the state's goal of protecting residents.  *In re Taylor*, 60 Cal. 4th 1019, 1042 (2015).

30. The Claremont Residency Restrictions subject Registrants in Claremont to arbitrary, oppressive, and unreasonable governmental action in that they are blanket proscriptions applied to all affected Registrants without regard to the particularized circumstance of each individual or any rational relation to public safety.  See *Taylor*, 60 Cal. 4th at 1042.  The irrationality of the Claremont Residency Restrictions is evidenced by the arbitrariness of their application to many foreseeable and everyday situations, including but not limited to:

a. Imposing a residency restriction of 2,000 feet which, according to California's Sex Offender Management Board ("CASOMB"), "is too great a distance to be able to see anything or anyone in a meaningful way."  Indeed, in opposing residency restrictions outright, CASOMB concludes that "There is no rational basis that supports 2,000 feet as a distance that increases the safety of children."[2]

b. Prohibiting residency in relationships to schools and parks, and thereby limiting Registrants' proximity to those locations primarily during times such as evenings and weekends when children are unlikely to be present at those locations.

c. The Ordinance's application to Registrants whose offense involved an adult, but who are nevertheless barred from residing in proximity to schools when their

_____

[2] CASOMB, Homelessness Among California's Registered Offenders – An Update (Aug. 2011), at 25, *available at* http://www.casomb.org/docs/Residence_Paper_Final.pdf.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

offense involved neither schools nor children, the class of individuals that the Ordinance purportedly seeks to protect.

31.     The Claremont Residency Restrictions bear no rational relationship to any legitimate governmental purpose in that they contradict and hamper the objectives of Jessica's Law; fail to protect the public; and deprive Plaintiff and all Registrants of stable homes, family support, social and medical services, and other means necessary to live productive, law-abiding lives, as confirmed by numerous authorities, including but not limited to:

a.     *In re Taylor*, 60 Cal. 4th 1019, 1042 (2015) (Blanket enforcement of residency restrictions "cannot survive rational basis scrutiny because it has hampered efforts to monitor, supervise, and rehabilitate [Registrants] in the interests of public safety, and as such, bears no rational relationship to advancing the state's legitimate goal of protecting children . . . .").

b.     *People v. Lynch*, 2 Cal. App. 5th 524, 528 (2016) ("[A]pplying the residency restriction to nonparolees would conflict with the purpose of registration. We believe section 290 registration laws aim at permitting local enforcement authorities to monitor these registrants in the community.  Less restriction on housing sites for probationers permits this supervision function.  Also, restricting access to housing opportunity disrupts the rehabilitation process for the broader group of men and women on probation; they should focus on treatment and rehabilitation instead of a limited residential market.").

c.     *Doe v. City of Lynn*, 472 Mass. 521, 531 & n.15 (2015) (As a supervised and stable home has been recognized as a factor that minimizes the sex offender's risk of reoffense, th[e] disruption [imposed by residency restrictions] is inconsistent with the Legislature's goal of protecting the public." (citing *Taylor*, 60 Cal. 4th 1019)).

d.     CALIFORNIA SEX OFFENDER MANAGEMENT BOARD, HOMELESSNESS AMONG CALIFORNIA'S REGISTERED OFFENDERS – AN UPDATE (Aug. 2011), at 26 ("CONCLUSIONS.  Based on all that is known about sex offender recidivism and the nature of most sex offenses involving children, there is no evidence that residency restrictions are related to preventing or deterring sex crimes against children.  To the contrary, the evidence strongly suggests that residency restrictions are likely to have the unintended effect of increasing the likelihood of sexual re-offense.").[3]

e.     Jill S. Levenson, Ph.D., *Hidden Challenges: Sex Offenders Legislated into Homelessness*, JOURNAL OF SOCIAL WORK, at 8 (June 22, 2016) (collecting scholarship that confirms the generally low risk of re-offense presented by a Registrant, and concluding that "Residential restriction laws should be abolished in their current form" because "they contradict decades of research demonstrating that when criminal offenders return to communities they are much more likely to reintegrate successfully when they have meaningful employment, stable housing, and the support of law-abiding family and peers.").[4]

32.     Defendants have expended, are expending, and/or will expend public funds to enforce, prepare to enforce, and/or attempt to enforce the Claremont Residency Restrictions.  Defendants have a mandatory duty to refrain from expending public funds to enforce, prepare to enforce, and/or attempt to enforce the Claremont Residency Restrictions because they are preempted by state law and unconstitutional.

33.     In addition, while the Claremont Residency Restrictions do not by their terms impose burdens on persons other than Registrants, the Claremont Residency Restrictions, as applied, may impose burdens upon family members of Registrants and

[3] http://www.casomb.org/docs/Residence_Paper_Final.pdf.
[4] http://jsw.sagepub.com/content/early/2016/06/21/1468017316654811.abstract

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

upon others who reside with or wish to reside with Registrants, with the exceptions as previously defined.

34.    To the extent that the Claremont Residency Restrictions impose burdens on Registrants who are not currently serving terms of parole, the Claremont Residency Restrictions are preempted by California state law and are therefore unconstitutional because California state law occupies the field of regulations that govern Registrants' daily lives, including the locations in which they may be present. *People v. Nguyen*, 222 Cal. App. 4th 1168, 1180-81 (2014).

35.    To the extent that the provisions of the Claremont Residency Restrictions that prohibit Plaintiff and other Registrants from "otherwise occupying" a Single family, Multifamily, or Hotel dwelling apply to the *physical presence* of those Registrants, as opposed to the locations where they reside, the Claremont Residency Restrictions are preempted by California state law. *People v. Nguyen*, 222 Cal. App. 4th 1168, 1180-81 (2014).

36.    The Claremont Residency Restrictions lack any rational relationship to a legitimate governmental interest by distinguishing between Registrants convicted of offenses before and after the effective date of the Ordinance, and by imposing the Claremont Residency Restrictions on the latter group but not the former.  Imposing such substantial burdens on the rights of certain Registrants based solely on the effective date of the Ordinance is arbitrary and therefore unconstitutional.

37.    Defendants lack either a compelling or substantial legitimate governmental interest in restraining the civil liberties of Registrants in the manner expressly provided by the Claremont Residency Restrictions.

38.    In addition, the Claremont Residency Restrictions are not the least restrictive means to further any compelling or substantial governmental interest including, but not limited to, protecting children as the Claremont Residency Restrictions purport.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

39. Further, the Claremont Residency Restrictions fail to pass constitutional muster because their restrictions are not sufficiently narrowly tailored to serve a legitimate government interest.

40. The Claremont Residency Restrictions are overly broad and burden substantially more constitutionally protected conduct than is necessary to further any legitimate governmental interest.

41. Finally, the Claremont Residency Restrictions are an arbitrary, politically motivated act imposed by a local government in response to popular sentiments, based upon misinformation, which seeks retribution against Plaintiff and other Registrants who constitute a socially outcast minority.  The Claremont Residency Restrictions also lend themselves to discriminatory enforcement as well as the suppression of the constitutional rights of Plaintiff and other Registrants and the individuals who reside with them, including spouses and children.

42. For the reasons stated above, the Claremont Residency Restrictions are preempted by California state law, and are also in violation of the Fourteenth Amendment to the United States Constitution.

## FIRST CLAIM

### (State Law Preemption)

43. Plaintiff re-alleges paragraphs 1 through 42 of this Complaint as though fully set forth herein.

44. Article XI, Section 7 of the California Constitution provides that "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."  Accordingly, local ordinances in conflict with, or preempted by, state law are invalid and unenforceable.

45. California state law contains a comprehensive scheme regulating the daily lives of Registrants, including the areas in which they may be present.  By enacting this comprehensive scheme, the Legislature evinced an intention to fully occupy the field of

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

sex offender regulation. *People v. Nguyen*, 222 Cal. App. 4th 1168 (2014), *rev. denied* 2014 Cal. LEXIS 3030 (2014).

46. California Penal Code section 3003.5(c), also known as "Jessica's Law," does not authorize local government to impose residency restrictions on individuals other than parolees. Accordingly, those provisions of the Claremont Residency Restrictions which apply to Plaintiff and other Registrants who are not currently on parole are preempted and unconstitutional.

47. In addition, those portions of the Claremont Residency Restrictions that prohibit Plaintiff and other Registrants from being physically present in a given dwelling are preempted and unconstitutional.

## SECOND CLAIM

### (42 U.S.C. § 1983 – Fourteenth Amendment – Due Process and Equal Protection)

48. Plaintiff re-alleges paragraphs 1 through 47 of this Complaint as though fully set forth herein.

49. By leaving in place, enforcing, and/or threatening to enforce the Claremont Residency Restrictions, Defendants deprive Plaintiff and other Registrants of rights guaranteed by the Fourteenth Amendment of the United States Constitution, including the Substantive Due Process and Equal Protection Clauses as well as the rights to family autonomy, privileges and immunities, and the right to travel. Defendants commit these unconstitutional acts under color of authority of law.

50. The Claremont Residency Restrictions constitute arbitrary and capricious state action that bears no rational relationship to a legitimate state interest, and as such violates the Due Process Clause of the Fourteenth Amendment.

51. The Claremont Residency Restrictions also violate the Fourteenth Amendment's guarantee of Equal Protection by making an arbitrary and irrational distinction between Registrants convicted of offenses before and after the effective date

of the Ordinance, and by imposing the Claremont Residency Restrictions on the latter group but not the former.

52.     Continued enforcement or threats of enforcement of the Claremont Residency Restrictions violates the rights of Plaintiff and other Registrants which are protected by the Fourteenth Amendment of the United States Constitution.  Therefore, the Claremont Residency Restrictions are void, both facially and as applied, and should be enjoined and their previous enforcement nullified.  The injuries Plaintiff and other Registrants have suffered and continue to suffer are the result of actions taken by Defendants and are severe, irreparable, and ongoing.  Immediate and permanent injunctive relief is necessary to halt and prevent further occurrence of these ongoing constitutional deprivations and infliction of irreparable harm.

## THIRD CLAIM

### (28 U.S.C. §2201 – Declaratory Relief)

53.     Plaintiff re-alleges paragraphs 1 through 52 of this Complaint as though fully set forth herein.

54.     An actual controversy exists between Plaintiff and Defendants regarding the constitutionality and enforceability of the Claremont Residency Restrictions.

55.     Plaintiff is entitled to a declaration of rights with regard to the Claremont Residency Restrictions.

## PRAYER FOR RELIEF

Because of the actions alleged above, Plaintiff seeks judgment against Defendants as follows:

a.     That Defendants be enjoined in perpetuity from enforcing Title 9, Chapter 9.82 of the Claremont Municipal Code;

b.     That Title 9, Chapter 9.82 of the Claremont Municipal Code be declared null and void under the Fourteenth Amendment to the United States Constitution; and Article I, Section 7 of the California Constitution;

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

c.        That Plaintiff recovers from the Defendants, under 42 U.S.C. Section 1988, all of Plaintiff's reasonable attorney's fees, costs and expenses of this litigation; and

d.        That Plaintiff recovers such relief as the Court deems just and proper.

Dated:  August 2, 2017                              LAW OFFICE OF JANICE M. BELLUCCI


By: _____*/s/ Janice M. Bellucci*_____
Janice M. Bellucci
Attorney for Plaintiff

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**